UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STANLEY WHITNEY,          )  | |
|                                            )  | |
|     Plaintiff                 )  | |
|                                            )  | |
| v.                                       )  | Civil No. 04-38-P-H |
|                                            )  | |
| WAL-MART STORES         )  | |
| INCORPORATED,              )  | |
|                                            )  | |
|     Defendant              )  | |

**ORDER ON MOTION TO DETERMINE FUTURE COURSE OF PROCEEDINGS
AND SUPPLEMENTAL RECOMMENDATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Wal-Mart has filed a motion to determine the future course of these proceedings (Docket No. 88) in light of the Law Court Mandate on questions certified to it. Essentially, Wal-Mart seeks permission to submit a supplemental brief in support of its motion for summary judgment to address the impact of the state law definition of "disability" recently established by the Law Court. (Id. at 2-3.) In response, the plaintiff Stanley Whitney takes the position that nothing remains but for the court to enter an order denying the motion for summary judgment on the disability claim so that this matter can proceed to trial. (Docket No. 89 at 2.) The motion has been referred to me for determination and for a recommended decision on any remaining issues on the still-pending motion for summary judgment. I now deny Wal-Mart's request to submit supplemental briefing and recommend that the Court deny the motion for summary judgment.

## DISCUSSION

I am satisfied that the summary judgment motion should not be held open in order for Wal-Mart to present additional legal arguments that it could have presented initially. However, in its summary judgment memorandum of law Wal-Mart raised three issues: (1) that Whitney's disability does not substantially limit a major life activity; (2) that the reasonable accommodation sought by Whitney—that he be allowed to work fewer hours per week and have two consecutive days off while continuing as a TLE manager—would have changed the essential functions of the position and Wal-Mart was not required to make that accommodation in any event; and (3) that the record as a whole did not support a finding that Wal-Mart acted adversely to Whitney based upon any animus toward his disability. My recommended decision on that motion addressed only the first issue because it was, in my estimation, dispositive of Whitney's disability discrimination claim. I concluded that the Maine Human Rights Commission's interpretation of the language of section 4553(7-A) of the Maine Human Rights Act (MHRA), that it applied only to disabilities that substantially limit a major life activity, was a valid administrative construction of the Act that should be deferred to based on what I regarded as ambiguity in the Act's language. The District Court "adopted" my recommendation over Whitney's objection, but first certified to the Law Court the questions of (1) whether the Act's definition of disability required a showing of a "substantial limitation" of the kind required under federal disability law and (2) whether the Commission's construction of the Act was valid. The Law Court resolved those questions in Whitney's favor, thereby undermining the basis for my recommendation on the disability claim[1] and, by extension, the Court's conditional adoption of

---

[1] The recommended decision also recommended that summary judgment enter against Whitney's age discrimination claim for different reasons, which recommendation the Court adopted without reservation. In addition, the Court adopted my recommendation that Whitney's sexual dysfunction did not give rise to an actionable claim because of the dearth of evidence that it had anything whatsoever to do with Wal-Mart's consideration of

2

my recommendation.  For purposes of this case, "physical or mental disability" under the MHRA includes, without limitation, "any disability [or] infirmity . . . caused by . . . disease."  <u>Whitney v. WalMart</u>, 2006 ME 37, ¶ 24, ___ A.2d ___, ___ (4-3).  Because it is undisputed that Whitney has high blood pressure and heart disease, there is a genuine issue of material fact whether he is disabled or infirm, although I do note that his doctors indicate he is capable of working nine-hour days, 45 hours per week so long as he has two consecutive days off. [2]  That he may be disabled, however, does not dispose of the alternative bases for summary judgment that were raised by Wal-Mart in its motion.  I address those here.  The material facts have already been set forth in my earlier recommended decision and are not repeated here.

A. **Reasonable Accommodation/ Undue Hardship Issue**

Wal-Mart maintains that, even if Whitney is disabled, Wal-Mart was not required to lower its work-hour and scheduling requirements in order to accommodate Whitney's disability. (Mot. Summ. J. at 9-10, Docket No. 11.)  This is so, Wal-Mart argues, because working in excess of 45 hours per week and without a guarantee of consecutive days off are "essential functions of the position."  (<u>Id.</u> at 10.)  Stated alternatively, Wal-Mart asserts that accommodating Whitney's work restriction in a management position would be an "undue hardship."  (<u>Id.</u> at 10-12.)

---

Whitney's qualifications to serve as a manager in its stores.  Finally, the Court adopted my recommendation that Whitney's employment contract claim was not actionable by virtue of Maine's employee-at-will doctrine.  The Law Court's Mandate has no impact on that determination.  Thus, the only issues remaining concern, exclusively, the merits of Whitney's MHRA disability claim that relies on his heart condition as the relevant disability or infirmity.

[2]     Wal-Mart asserted in its opposing statement of material facts that "Mr. Whitney was diagnosed with extremely high blood pressure and his EKG indicated the possibility of serious heart disease."  (Def.'s Opposing Statement of Material Facts ¶ 44, Docket No. 41.)  The Law Court did not address the factual question of whether Mr. Whitney was disabled because it had no occasion to, although it did draw attention to the matter by placing in quotation marks my earlier description of Whitney's heart condition as only "possibly serious."  <u>Whitney</u>, 2006 ME 37, ¶ 3, __ A.2d at ___.  In my view, the "any disability or infirmity" language of the MHRA, which the Law Court has not placed any restriction on, is such a low threshold that this Court ought not foreclose, as a matter of law, a claim premised on "possibly serious" heart disease.  After all, Whitney's doctors took him off work for some time and this absence and the subsequent work-hour restrictions directly contributed to Wal-Mart's decision to remove Whitney from his TLE management position.

Pursuant to the MHRA it is unlawful employment discrimination to discharge an employee or discriminate with respect to hire or transfer on account of, *inter alia*, physical disability, except when based on a *bona fide* occupational qualification. 5 M.R.S.A. § 4572(1)(A). In Percy v. Allen, 449 A.2d 337 (Me. 1982), the Law Court addressed the *bona fide* occupational qualification (BFOQ) defense for the first time.  Although the MHRA defense "is not as clearly stated as the federal exception," the Court held that federal precedent on the federal BFOQ exception to liability should serve as a reference for application of the state law BFOQ defense. Id. at 343 (quoting Me. Human Rights Comm'n v. City of Auburn, 408 A.2d 1253, 1266 (Me. 1979)).  The defense is an "extremely narrow one," and the burden lies with the defendant to prove its application. Id.  In addition to demonstrating the existence of a BFOQ, the defendant must demonstrate that a reasonable accommodation is not available that would enable the plaintiff to meet the qualification. Id.  Sometimes accommodation means an employer must, within reason, "rearrange job responsibilities or engage in alternative practices." Id. " So considerable is the importance of equal employment opportunity under the Maine statute that the arrangement of job assignments and even the structure of the facility itself are not immune from reasonable alterations that are necessary to effect a harmonization of employment practices with that opportunity." Id. at 345 (addressing the question of whether a female guard could be reasonably accommodated in order to work in a male prison).  This is so because the MHRA "requires such reassignment and reorganization which can be implemented without undue burden to the employer and which is an effective and reasonable basis on which to create equal employment opportunities [for] the plaintiff." Id.  Assuming that the Law Court would find persuasive local federal precedent construing the "undue hardship" issue as it arises in litigation under Title VII or the Americans with Disabilities Act, an undue hardship exists if the

4

accommodation requested by the employee "would impose more than a *de minimis* cost on the employer." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 134 (1st Cir. 2004) (involving a Title VII religion accommodation claim). "This calculus applies both to economic costs, such as lost business or having to hire additional employees to accommodate a Sabbath observer, and to non-economic costs, such as compromising the integrity of a seniority system." Id. (finding an undue hardship where cashier insisted, on religious grounds, that she be permitted to wear various facial jewelry inconsistent with Costco's dress code).

As for Maine precedent, in Percy the female plaintiff sought accommodation in order to obtain *a* job as a male prison guard. Id. The Law Court vacated judgment for the defendants and remanded the matter to the trial court to consider whether the defendants had demonstrated at trial that a "selective job assignment" could not be crafted without undue hardship to prison management. Id. at 345-46. Here, of course, Whitney complains because he was not accommodated in regard to a specific job as TLE manager or in regard to remaining a management level employee in another department. As it turns out, he did, in fact, receive a job reassignment. In any event, the question appears to me to be whether it would have caused Wal-Mart undue hardship to permit Whitney to work 45 hours per week rather than 48-52 hours per week and to have two consecutive days off every week rather than only on occasion. Whitney attests that he could perform the essential functions of the TLE management position within the confines of a 45-hour work week. (Pl.'s Statement of Add'l Material Facts ¶¶ 74, 157, 165, 175 Docket No. 42.) Because Whitney actually held the job for some period of time, I find that his assessment is probative evidence. Coupled with the fact that he later obtained another management position despite his work restrictions, Whitney has presented enough evidence to generate a *prima facie* claim for denial of a reasonable accommodation. As for the matter of

undue hardship, Wal-Mart has introduced a conclusory statement from a store manager that a reduced-hour schedule would be unworkable because it would have a negative impact on store morale.[3]  (Def.' Statement of Material Facts ¶ 130, Docket No. 12.)  Wal-Mart has not put forth the kind of specific facts about the TLE manager position that would demonstrate the *per se* unreasonableness of, or the undue hardship that would arise from, Whitney's proposed accommodation.  Such department-specific evidence is required here, especially in light of the fact that, as of the filing of the summary judgment papers, Whitney held another management position in another department that accommodated his schedule requirements.[4]  Accordingly, I find that a genuine issue of material fact exists whether Whitney's proposed 45-hour work week with two consecutive days off would have been either a reasonable accommodation or an undue burden in relation to the TLE manager position he once held.  See Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 36-37 (1st Cir. 2000) (concluding that it was not *per se* unreasonable for an employee to request an accommodation that would have permitted him to

---

[3]     Wal-Mart has introduced other evidence demonstrating that several of its other Maine-based TLE managers work in excess of 45 hours per week and do not get consecutive days off on a regular basis.  (Def.'s Statement of Material Facts ¶¶ 136-183.)  It also has introduced its policy titled "TLE Management Work Schedule," which calls for the 48- to 52-hour workweek for TLE managers, though it is dated October 2002, after the events giving rise to this lawsuit.  (Def.'s Response to Pl.'s First Req. for Produc. of Docs., Ex. F, Docket No. 12, Elec. Attach. 23.)  The schedule calls for TLE managers to ordinarily have Sundays and Wednesdays off, but Wal-Mart nowhere explains why.  It also requires an extended workday on Fridays, running from 7 a.m. to 10 p.m., but this includes two meal breaks.  Whitney has indicated that he would not consider break times to eat into his 9-hour-per-day work restriction.  Conceivably, the extended Friday workday might pose the most difficulty in light of Whitney's 9-hour-per-day restriction, but Wal-Mart has not explained the factors that went into this requirement so its conclusory hardship assertion cannot be objectively evaluated.  The MHRA BFOQ standard described by the Law Court in Percy suggests that such a level of detail is to be expected of defendants.  Finally, Wal-Mart's references to the hours worked by other TLE managers reflect that none regularly have Saturdays and Sundays off in sequence.  This may be true, but Whitney's medical restriction does not require that his consecutive days off fall on the weekend, when Wal-Mart is busiest.

[4]     The nature of the shifting burden here between Whitney (demonstrating some evidence of reasonableness or a *prima facie* case of reasonableness) and Wal-Mart (demonstrating undue hardship) appears to be appropriate in light of First Circuit precedent.  See Reed v. LePage Bakeries, Inc., 102 F. Supp. 2d 33, 35-37 (D. Me. 2000) (discussing the uncertain precedent concerning allocation of the burdens of demonstrating reasonableness versus undue hardship).  Note, however, that in Percy the Law Court appeared to be more concerned with the employer's burden of demonstrating undue hardship, at least at the trial phase, and squarely placed the burden of the BFOQ defense on the employer.

work at odd hours of the day, so long as he worked his required total number of hours). As for the measures taken by Wal-Mart subsequent to removing Whitney from the TLE manager position, I similarly conclude that a genuine issue of material fact exists for a jury to decide whether those measures rose to the level of a reasonable accommodation for Whitney's disability. See Cloutier, 390 F.3d at 134 (recognizing the issue of whether accommodations made in the wake of adverse employment actions can shield an employer from liability but not deciding it).[5]

**B.     The Sufficiency of the Evidence Issue**

Wal-Mart argues that there is no evidence in the record that Whitney's demotion and his difficulties transferring to another manager position at Wal-Mart had anything to do with disability discrimination. (Mot. Summ. J. at 14.) Instead, Wal-Mart asserts that Whitney was not qualified to work as a TLE manager by virtue of his work restrictions. This argument simply rehashes Wal-Mart's BFOQ arguments. It is apparent from the record that Whitney's disability and his request for a schedule accommodation was the direct cause of his loss of the TLE manager position and the initial denial of any replacement position in management.

---

[5]     In my original recommended decision, when discussing Whitney's age discrimination claim, I indicated that "the factual record plainly demonstrates that filling a department manager position at Wal-Mart with an individual who can only work 45 hours per week and requires two consecutive days off creates additional supervisory responsibilities for store managers . . . because a candidate with such restrictions does not fit the mold." I made this observation in order to explain how the record clearly pointed to Whitney's work restrictions as the only obstacle he was facing at Wal-Mart and how nothing in the record pointed to age as a cause of Whitney's employment problems. I pointedly did not find in my discussion that accommodating these work restrictions would impose an undue hardship on Wal-Mart. Indeed, I did not even address that aspect of Wal-Mart's motion in my earlier discussion. It is with some consternation, however, that I find I wrote in the opening paragraph of my recommended decision: "I agree with Wal-Mart that summary judgment should enter against Whitney's disability discrimination claim because the record reflects that Whitney failed to meet Wal-Mart's legitimate expectations for department managers by virtue of medical restrictions placed on his ability to work more than 45 hours per week and without two consecutive days off." That sentence was not supported by my discussion which dwelt almost entirely upon the issue of the meaning of "disability" under the ADA and MHRA. To the extent that *dicta* in the opening paragraph of my original recommended decision tends to imply that I had made a factual determination on the issue of undue hardship, it should be entirely disregarded.

Accordingly, I conclude that the matter of discriminatory intent is most appropriately a question of fact for the jury to resolve.

## CONCLUSION

For the reasons stated above, I now **DENY** Wal-Mart's request for leave to supplement its summary judgment briefing ("motion to determine further course," Docket No. 88) and **RECOMMEND** that the Court **DENY** Wal-Mart's motion for summary judgment (Docket No. 11).

## CERTIFICATE

Any objections to the Order on motion to determine future course of proceedings shall be filed in accordance with Fed. R. Civ. P. 72.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: May 2, 2006